FILED
SEP 02 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:26 CR 00400 |
| | ) | Title 18, United States Code, Section 1343 |
| ORVILLE EMANUEL SHAW, | ) | |
| Defendant. | ) | JUDGE FLEMING |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

Defendant and Relevant Entities and Financial Institutions

1. Defendant ORVILLE EMANUEL SHAW resided in or around Glenn Heights, Texas.

2. Destiny Investment Group, LLC was a commercial entity that Defendant created, controlled, and owned with a business address in Maple Heights, Ohio. Defendant established Destiny Investment Group, LLC in or around May 2013.

3. Elijah Emanuel Development and Services, LLC was a commercial entity that Defendant created, controlled, and owned with a business address in Willoughby, Ohio. Defendant established Destiny Investment Group, LLC in or around June 2013.

4. No Problem Auto Sales, LLC was a commercial entity that Defendant created, controlled, and owned with a business address in Dallas, Texas. Defendant established No Problem Auto Sales, LLC in or around January 2013.

5. Shaw's Investment Group, LLC was a commercial entity that Defendant created, controlled, and owned with a business address in Euclid, Ohio. Defendant established Shaw's Investment Group, LLC in or around February 2011.

6. Shaw's Investment Group, Inc. was a commercial entity that Defendant created, controlled, and owned with a business address in Euclid, Ohio. Defendant established Shaw's Investment Group, LLC in or around February 2018.

7. Lender 1 and Lender 2 were third-party participating Paycheck Protection Program lenders.

<u>The Paycheck Protection Program</u>

8. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses, and assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans, which had government-backed guarantees.

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief under the CARES Act was authorization for the SBA to issue loans to small businesses and non-profit entities experiencing revenue loss due to the pandemic.

10. Two forms of assistance under the CARES Act were the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program, both of which provided loan assistance for certain businesses negatively affected by the COVID-19 pandemic.

11. The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The

PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

12. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

13. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

14. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase securities, consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses of the business.

The Economic Injury Disaster Loan Program

15. Certain provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed the SBA to offer EIDL funding to businesses and non-profit organizations that existed in an operational condition on February 1, 2020, and were negatively affected by the COVID-19 pandemic.

16. To apply for EIDL funding, applicants submitted personal and business information via the SBA online portal. The EIDL application process involved filling out an electronic form with information relating to the applicant's business in the 12 months prior to the COVID-19 pandemic.

17. The information to be provided to the SBA by the applicant included the ownership of the affected business; the size of the business; the type of business; the number of employees; the gross business revenues realized; and the cost of goods sold. This information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the applicant was eligible to receive.

18. When submitting an application, applicants for EIDL funding had to affirmatively certify by checking a box that the information in the application was true and correct under the penalty of perjury and applicable criminal statutes. Applicants generally did not have to submit documentation supporting the representations in the applications.

19. In conjunction with the submission of an EIDL application, at certain times during the EIDL program, an applicant could also request and then receive an EIDL Cash Advance Grant (an "Advance"), generally up to $1,000 per employee, up to a total of $10,000. The Advance was not required to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that might be offered by the SBA at a later date.

20. A non-agricultural, for-profit applicant was generally eligible to receive EIDL funding in an amount corresponding to its gross margin over six months (generally consisting of the reported revenue minus the reported cost of goods sold), less the amount of any Advance and certain other government-backed compensation, with interest accruing at a rate of 3.75%. Certain businesses and non-profit entities received a lower interest rate.

21. Funds paid by the SBA under the EIDL program were processed and issued by SBA from the state of Colorado and sent to the applicant borrower's financial institution.

22. Pursuant to the provisions governing the EIDL program, loan proceeds were required to be used by the affected business receiving EIDL funding only for certain permissible expenses of the business. Proceeds from the loans could be used as working capital to pay normal operating expenses such as continuation of health care benefits, rent, utilities, and fixed debt payments.

COUNTS 1-2
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury charges:

23. The factual allegations of paragraphs 1 through 22 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

The Scheme to Defraud

24. From in or around May 2020, through in or around September 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ORVILLE EMANUEL SHAW devised and intended to devise a scheme and artifice to defraud the Small Business Administration and Lenders 1 and 2, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

Purposes of the Scheme

25. The purpose of the scheme was for Defendant to unjustly enrich himself by (a) obtaining COVID -19 pandemic stimulus funds, including EIDL and PPP loans from the SBA and PPP lenders, through false statements; (b) diverting proceeds for Defendant's use; and (c) concealing the scheme.

Manner and Means of the Scheme

26. It was part of the scheme that:

a. Defendant made false representations on COVID -19 pandemic stimulus applications, including EIDL and PPP applications, including false representations about the applicant businesses and about his intention to use the proceeds of the loans consistent with the EIDL and PPP program rules.

b. Defendant created and submitted falsified documents to support the applications.

c. Once Defendant received ill-gotten proceeds, he transferred funds to various accounts under his control and used funds to make personal expenditures and to benefit other businesses he owned and controlled.

d. Defendant made false representations to obtain PPP forgiveness, claiming to have spent PPP loan proceeds in a manner that qualified for a PPP loan to be forgiven, in order to cause the SBA pay off the amount due on the loan, including accrued interest, on the borrower's behalf, effectively converting a PPP loan into a government grant obtained by fraud.

Acts in Furtherance of the Scheme

27. In furtherance of the scheme and to accomplish its purpose, Defendant committed and caused to be committed, in the Northern District of Ohio, Eastern Division, and elsewhere, the following acts, among others:

28. On or about the dates listed below, Defendant applied for the following EIDL and PPP loans, using materially false statements about the entities' revenues, expenses, and employees, causing the SBA, Lender 1, and Lender 2 to approve the applications and collectively to issue at least $756,582 in EIDL and PPP funds, in addition to EIDL Advance funds:

| Name | Type | Lender | Application Date | Funded Date | Amount |
|---|---|---|---|---|---|
| No Problem Auto Sales, LLC | EIDL | SBA | June 19, 2020 | June 26, 2020 | $150,000 |
| Shaw's Investment Group, Inc | EIDL | SBA | June 27, 2020 | July 14, 2020 | $150,000 |
| Destiny Investment Group, LLC | EIDL | SBA | July 15, 2020 | August 5, 2020 | $150,000 |
| Elijah Emanuel Development and Services, LLC | EIDL | SBA | July 16, 2020 | August 5, 2020 | $150,000 |
| No Problem Auto Sales, LLC | PPP | Lender 1 | May 9, 2020 | May 13, 2020 | $20,832 |
| Shaw's Investment Group, Inc. | PPP | Lender 2 | June 12, 2020 | June 16, 2020 | $67,875 |
| Destiny Investment Group, LLC | PPP | Lender 2 | June 25, 2020 | June 26, 2020 | $67,875 |
| **TOTAL** | | | | | **$756,582** |

a. In support of these fraudulent applications, Defendant submitted falsified documents, including (a) a falsified 2020 Form 941 (Employer's Quarterly Federal Tax Return) for Shaw's Investment Group, Inc., (b) falsified 2019 and 2020 Forms 941 (Employer's Quarterly Federal Tax Return) for Destiny Investment Group, LLC, and (c) a falsified Schedule C (Profit or Loss from Business) to Form 1040 (Individual Income Tax Return), in a PPP application for No Problem Auto Sales, LLC.

Execution of the Scheme

29. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ORVILLE EMANUEL SHAW, for the purpose of executing the scheme described above, and attempting to do so, transmitted, and caused to be transmitted, by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds, each transmission routed from Ohio across state lines, and each constituting a separate count of this Indictment:

| Count | Date | Transmission Description |
|---|---|---|
| 1 | July 15, 2020 | Electronic submission of EIDL application in the name of Destiny Investment Group, LLC |
| 2 | July 16, 2020 | Electronic submission of EIDL loan application in the name of Elijah Emanuel Development and Services, LLC |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.